Mitchell F. Boomer (State Bar No. 121441)
Cara Ching-Senaha (State Bar No. 209467)
JACKSON LEWIS LLP
199 Fremont Street, 10th Floor
San Francisco, California 94105
Telephone: (415) 394-9400
Facsimile: (415) 394-9401

ADR

Attorneys for Defendant
INTERNATIONAL BUSINESS MACHINES CORPORATION

E-FILING

FILED
2008 MAY 29 P 3:29
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

Fee Paid NP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – **SAN JOSE DIVISION**

JOHN SCHWARZKOPF,

Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES, INC.; AND DOES 1 THROUGH 20,

Defendants.

Case No. C08 02715 RS

**NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT [28 U.S.C. §§ 1441(a)]**

Complaint filed April 21, 2008

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Defendant INTERNATIONAL BUSINESS MACHINES CORPORATION (erroneously sued as International Business Machines, Inc." (hereinafter "Defendant" or "IBM") hereby removes to this Court the state court action described below:

1. On April 21, 2008, Plaintiff JOHN SCHWARZKOPF ("Plaintiff") commenced the action entitled John Schwarzkopf v. International Business Machines, Inc.; and DOES 1 through 50, by filing a complaint ("Complaint") against Defendant in the Superior Court of the State of California, County of San Francisco, Case No. CGC-08-474469.

2. Plaintiff's Complaint alleges the following causes of action: (1) breach of

contract; (2) breach of the covenant of good faith and fair dealing; (3) fraud; (4) promissory estoppel; and (5) violation of Business and Professions Code section 17200.

3.      Defendant first received a copy of the Complaint on May 1, 2008, when Defendant was served with a copy of the Summons and Complaint. A copy of the Summons and Complaint are attached hereto as **Exhibit A**. A true copy of the case file from the San Francisco Superior Court, which includes an additional copy of the Complaint, as well as Defendant's timely-filed Answer to the Complaint, is attached hereto collectively as **Exhibit B**.

4.      This Notice of Removal has been timely filed under 28 U.S.C. Section 1446(b) because it was filed within 30 days after Defendant's receipt of Plaintiff's Complaint.

5.      No further proceedings have occurred in the state action, other than the filing of the Complaint and Answer.

6.      This action is a civil action which may be removed to this Court by Defendant pursuant to the provisions of the 28 U.S.C. Section 1441(a) in that, as shown below, it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7.      Without conceding that Plaintiff is entitled to damages or could recover damages in any amount, the amount in controversy in this action exceeds $75,000 based on the following: Plaintiff seeks payment of commission fees, pursuant to an alleged contract, which exceed $1 million. Specifically, Plaintiff alleges that he is owed $1,529,581.35 in commissions, minus $513,509.64 in commissions which he admits having been paid. (Complaint at ¶¶50-51) In addition, Plaintiff seeks punitive damages (*see* Prayer For Relief ¶3) and an award of attorneys' fees (*see* Prayer For Relief ¶5).

8.      This action is between citizens of different states, in that Plaintiff John Schwarzkopf alleges in his court Complaint that he was a citizen of the State of California and worked in California at the time this action commenced. Defendant IBM states on information and belief that Schwarzkopf does not currently reside nor work in the State of California.

9.      Defendant IBM was at the time the action commenced, and still is, a citizen of the State of New York under 28 U.S.C. Section 1332(c), in that its principal place of

2
NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT
[28 U.S.C. §1441(a)]                                              Case No.

1    business was, and still is, in the State of New York.  IBM is headquartered in Armonk, New

2    York.  IBM is a multinational computer technology corporation that manufactures and sells

3    computer hardware and software, and offers infrastructure services, hosting services, and

4    consulting services in areas ranging from mainframe computers to nanotechnology.

5            10.     The inclusion of "Doe" defendants in the state court complaint has no

6    effect on removability.  In determining whether diversity of citizenship exists, only the named

7    defendants are considered.  28 U.S.C. Section 1441(a).

8            11.     Venue is proper in the United States District Court for the Northern

9    District of California – San Jose Division, pursuant to 28 U.S.C. Section 1441(a) and Section

10   1391(a) because the state action was filed in San Francisco County, a county within this judicial

11   district.  Assignment to the San Jose Division of the above-entitled Court is proper pursuant to

12   Northern District of California Civil Local Rule 3-2(c) and (e), which provides that "all civil

13   actions and proceedings" that arise in the county of Santa Clara "shall be assigned" to "the San

14   Jose Division." L.R. 3-2(c), (e) (emphasis added).  "A civil action arises in the county in which

15   a substantial part of the events or omissions which give rise to the claim occurred…" L.R. 3-

16   2(c).  In this instance, in the 2006-2007 timeframe, Plaintiff worked primarily in San Jose (Cisco

17   offices), Berkeley (Plaintiff's home office) and San Francisco (Defendant IBM's corporate

18   office).  In addition, the contract that Plaintiff alleges had been breached was formed and

19   performed in San Jose (Cisco offices), located in the County of Santa Clara.  For these reasons,

20   removal to the Northern District of California – San Jose Division is appropriate pursuant to

21   Civil L.R. 3-2(c), (e).

22           12.     For all the foregoing reasons, this Court has jurisdiction over this matter

23   under 28 U.S.C. sections 1332 and 1441(a).

24   //

25   //

26   //

27   //

28   //

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT
[28 U.S.C. §1441(a)]                                    Case No.

1       WHEREFORE, Defendant prays that the above action now pending against it in

2   the Superior Court for the State of California, County of San Francisco, be removed to this

3   Court's San Jose Division.

4   DATED: May 28, 2008                     Respectfully submitted,

5                                           JACKSON LEWIS LLP

6

7                                           By_____

8                                           Mitchell F. Boomer
                                            Cara Ching-Senaha
9                                           Attorneys for Defendant
                                            INTERNATIONAL BUSINESS MACHINES
10                                          CORPORATION

11  H:\I\IBM Corporate Litigation (40134)\Schwarzkopf, John (123892)\Pleadings\Notice of Removal CMC 052208.doc

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          4
NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT
[28 U.S.C. §1441(a)]                              Case No.

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
05/01/2008
CT Log Number 513380030

|||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||

TO:    Alec S Berman, Attorney
       IBM Corporation
       1133 Westchester Avenue, MD-140
       White Plains, NY 10604

RE:    **Process Served in California**

FOR:   International Business Machines Corporation (Domestic State: NY)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| TITLE OF ACTION: | John Schwarzkopf, Pltf. vs. International Business Machines, Inc., et al., Dfts. *Name discrepancy noted.* |
| DOCUMENT(S) SERVED: | Summons, Complaint, Cover Sheet, Attachment(s) |
| COURT/AGENCY: | San Francisco County, Superior Court, CA Case # CGC08474459 |
| NATURE OF ACTION: | Employee Litigation - Breach of Contract - Failure and refusal to pay commission on the Cisco deal in accordance with the terms of the 2007 Incentive Plan and 2007 Quota Letter |
| ON WHOM PROCESS WAS SERVED: | C T Corporation System, Los Angeles, CA |
| DATE AND HOUR OF SERVICE: | By Process Server on 05/01/2008 at 14:55 |
| APPEARANCE OR ANSWER DUE: | Within 30 days after service - file written response // 9/19/09 at 9:00 a.m. - Case Management Conference |
| ATTORNEY(S) / SENDER(S): | Sharon R. Vinick Vinick Law Firm 350 Sansome Street San Francisco, CA 94104 415-722-4481 |
| ACTION ITEMS: | Telephone, Alec S Berman , 914-642-5847 *Left voicemail message* SOP Papers with Transmittal, via Fed Ex 2 Day , 798432989357 |
| SIGNED: PER: ADDRESS: | C T Corporation System Nancy Flores 818 West Seventh Street Los Angeles, CA 90017 |
| TELEPHONE: | 213-337-4615 |

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal opinion
as to the nature of action, the amount of damages, the answer date,
or any information contained in the documents themselves.
Recipient is responsible for interpreting said documents and for
taking appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

2:55 Am

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

~~IBM Corporation~~

*International Business Machines, Inc. and Does 1 through 20 (all)*

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
John Schwarzkopf

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>San Francisco Superior Court<br>400 McAllister Street<br>San Francisco, CA 94102-4514 | **CASE NUMBER:**<br>*(Número del Caso):* CGC-08-474464 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sharon R. Vinick, Vinick Law Firm          email: sharon@vinicklaw.com
350 Sansome Street, San Francisco, CA 94104 · ph: 415/722-4481; fax: 415/276-6338

| DATE: APR 2 1 2008 | Gordon Park-Li | Clerk, by | P NATT | , Deputy |
|---|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* *International Business Machines, Inc.*

under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
         ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Sharon R. Vinick (SBN 129914)
Vinick Law Firm
350 Sansome Street, Suite 300
San Francisco, CA 94104
TELEPHONE NO: 415/722-4481      FAX NO.: 415/276-6338
ATTORNEY FOR *(Name):* John Schwarzkopf

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Franciscoq
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102-4514
BRANCH NAME:

**ENDORSED**
**F I L E D**
San Francisco County Superior Court

APR 2 1 2008

**GORDON PARK-LI, Clerk**
PARAM NATT
BY: _____
Deputy Clerk

CASE NAME:
Schwarzkopf v. IBM Corporation, and Does 1 through 10

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder | | C G C - 0 8 - 4 7 4 4 6 9 |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: | |
| | | | DEPT: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[✓] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [✓] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[✓] monetary  b.[✓] nonmonetary; declaratory or injunctive relief  c.[✓] punitive
4. Number of causes of action *(specify):* five
5. This case [ ] is  [✓] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 21, 2008

Sharon R. Vinick (SBN 129914)
(TYPE OR PRINT NAME)                               ▶ _____
                                                   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

1  VINICK LAW FIRM
   SHARON R. VINICK (State Bar No. 129914)
2  350 Sansome Street, Suite 300
   San Francisco, CA 94104
3  Telephone: 415-722-4481
   Facsimile: 415-286-6338
4
5  Attorneys for John Schwarzkopf

```
                                        ENDORSED
                                        F I L E D
                                San Francisco County Superior Court

                                        APR 2 1 2008

                                    GORDON PARK-LI, Clerk
                                    BY:      PARAM NATT
                                                  Deputy Clerk
```

6                  SUPERIOR COURT OF CALIFORNIA

7             IN AND FOR THE COUNTY OF SAN FRANCISCO

8

9                                    )  CASE NO.
   JOHN SCHWARZKOPF                   )   C6C-08-474469
10                Plaintiff,          )  COMPLAINT
                                      )
11 v.                                 )
                                      )
12 INTERNATIONAL BUSINESS MACHINES,   )
   INC.; AND DOES 1 THROUGH 20        )  **DEMAND FOR JURY TRIAL**
13                                    )
14                Defendants.         )
                                      )  CASE MANAGEMENT CONFERENCE SET
15                                    )
                                      )      SEP 1 9 2008 -9⁰⁰ AM
16                                    )
17                                    )      DEPARTMENT 212
18
19     Plaintiff John Schwarzkopf ("Schwarzkopf") alleges as follows:

20                        **JURISDICTIONAL FACTS**

21     1.  At all times relevant hereto, Plaintiff, JOHN SCHWARZKOPF ("Schwarzkopf" or

22 "Plaintiff") was a resident of the city Berkeley, which is located in Alameda County.

23 Schwarzkopf began working for International Business Machines Corporation ("IBM") in

24 January 2006, as a Lotus Brand Software Representative.  Schwarzkopf's employment with

25 IBM was pursuant to a written agreement, which was later modified by certain policies,

26 practices, assurances and other statements, both oral and written.

---

COMPLAINT

2. Defendant International Business Machines Corporation ("IBM") is a New York corporation, which does business throughout the United States. At all relevant times, IBM maintained corporate offices in Brisbane, California.

3. The true names and capacities, whether individual, corporate, associate or otherwise and the true involvement of defendants sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff who therefore sues said defendants by such fictitious names and will amend this Complaint to show the true names, capacities and involvement when ascertained. Plaintiff is informed and believes and thereon alleges that each of the defendants designated as a DOE is responsible in some manner for the events and happenings herein referred to, and that plaintiff's injuries and damages (as hereinafter set forth) were proximately caused by said defendants.

4. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the defendants sued herein was the agent and/or employee of each of the remaining defendants, and each of them, was at all times acting within the purpose and scope of such agency and employment.

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

5. Plaintiff re-alleges and incorporates by reference ¶¶ 1 through 4, above, as though fully set forth herein.

6. In January 2006, Schwarzkopf was hired by IBM to work as a Lotus Brand Software Representative.

7. At the time of his hire, Schwarzkopf's base salary was $110,789 per year. Schwarzkopf also participated in IBM's "Leveraged Sales Incentive Plan" (the "Plan"), pursuant to which he could earn revenue related commissions. If he achieved his sales quota in 2006, his total compensation would have been $202,652 The total compensation for each successive year depended, in large part, upon his sales quota and his ability to meet that quota.

COMPLAINT

2

8.  On information and belief, the Plan was comprised of two documents:  1) a document entitled the "Incentive Plan" or the "Plan," which was a detailed description of the policies governing the payment of commissions to IBM employees; and 2) an individualized "Incentive Plan Letter" which set forth the quota and commission structure for each individual employee (hereinafter, "Quota Letter").

9.  On information and belief, IBM employees who were eligible to earn commissions received a new Quota Letter each year.

10. At the time of his hire, Schwarzkopf was assigned to manage the sale of Lotus brand products to a number of companies located in the greater San Francisco Bay Area. One of the accounts to which Schwarzkopf was assigned was Cisco Systems, Inc. ("Cisco").

11. In 2005, the year before Schwarzkopf began working for IBM, the company sold approximately $2 million in Lotus products to Cisco, including approximately $1 million in Websphere Portal software (a Lotus brand product).

12.  In or around March 2006, Schwarzkopf began actively exploring the opportunities for selling Lotus brand products to Cisco, including Websphere Portal software.

13. In the spring of 2006, Schwarzkopf learned that Cisco had purchased 12 licenses of Websphere Portal software in December of 2005.

14. In an effort to sell additional Websphere Portal licenses to Cisco, Schwarzkopf contacted Cisco and discussed ways in which the company might be able to effectively use Websphere Portal software.

15. Based upon his discussions with representatives of Cisco regarding the company's needs, in the spring of 2006, Schwarzkopf proposed that IBM provide Cisco with a Business Value Assessment ("BVA") for Websphere Portal software.

16. A BVA is an analysis, that can be provided to a client in a written report, or a live presentation, which provides information regarding the use of a product, the technology

COMPLAINT

3

1   requirements for installing particular software, or other information regarding products sold by

2   IBM.

3         17. Cisco agreed to have IBM make a BVA presentation regarding Websphere Portal

4   software.

5         18. The BVA presentation was just the first step in Schwarzkopf's efforts to sell

6   Websphere Portal software to Cisco that would be used by every department in the company.

7         19. Beginning in the spring of 2006 and continuing through June 30, 2007, Schwarzkopf

8   devoted approximately 75% of his time working on projects that were part of his ongoing

9   efforts to convince Cisco to enter into a contract for a multi-million dollar purchase of

10  Websphere Portal Software.

11        20. Schwarzkopf's efforts to sell Websphere Portal software to Cisco included, but were

12  not limited to, the following activities:  working with different groups in IBM to provide Cisco

13  with five different BVAs; leading a team that set up a "sandbox" for Cisco (which is a free-

14  standing computer environment in which Cisco would "play" with Websphere Portal Software);

15  leading a team which set up a "Proof of Concept" or "Pilot Program" for Cisco (which is a

16  computer environment run on Cisco computers which allows Cisco to actually use a limited

17  number of Websphere Portal licenses); obtaining IBM funding to pay for the BVAs, the

18  Sandbox, the Proof of Concept; working with outside vendors involved in these projects; and

19  working with a team to provide Cisco with a sales proposal.

20        21. From the spring of 2006 through June 30, 2007, Schwarzkopf was the only Lotus

21  Brand Software Representative who was working on a deal to sell Websphere Portal software

22  to Cisco and was personally responsible for the success or failure of IBM to sell Websphere

23  Portal software to Cisco.

24        22. On or about January 8, 2007, Schwarzkopf received a number of documents

25  describing the terms of the IBM "2007 Leveraged Sales Incentive Plan" (collectively, the "2007

26  IncentivePlan").

COMPLAINT

1    23. Prior to the issuance of the 2007 Incentive Plan, all sales quotas were annual.
2    However, under the 2007 Plan, each commissioned employee was given two sales quotas,
3    one for the first six months of the year, and one for the second six months of the year.

4        24.   The 2007 Plan includes a detailed description of the reasons that IBM decided to
5    move to a six month quota process.  One of the purported "Advantages for Sales and Services
6    Teams" was that the new process produced "Much more accurate quotas – no more mid-year
7    adjustments."  Furthermore, under the 2007 Incentive Plan, "January quotas remain in place
8    through June 30th" and that there would be "No need for February/March budget updates to
9    change quotas."  A true and correct copy of the "2007 Leveraged Sales Incentive Plan-at-a-
10   Glance Module" is attached hereto as Exhibit A.

11       25. Nothing in the 2007 Incentive Plan distributed to Schwarzkopf indicated that
12   commissions would be "capped" or that large sales would be subject to reduced commission
13   levels.

14       26. Schwarzkopf's quota for the first six months of 2007 was $968,450.00.  A true and
15   correct copy of the 2007 Quota Letter given to Schwarzkopf, is attached hereto as Exhibit B.

16       27. In the spring of 2007, Cisco indicated that it was interested in buying Websphere
17   Portal software, and that the purchase would probably be made in September 2007.  Based
18   upon conversations between Schwarzkopf and representatives from Cisco, Schwarzkopf
19   understood that Cisco planned to buy approximately $18 million in Websphere Portal software
20   and related services from IBM (hereinafter, the "Cisco deal").

21       28. In the spring of 2007, Schwarzkopf attended a regularly scheduled meeting at which
22   all of the sales people working in the Pacific Northwest Region discussed projected sales.
23   During that meeting, Schwarzkopf described the work that he had done with Cisco and said
24   that Cisco was likely to purchase approximately $18 million in Websphere Portal software and
25   related services in September 2007.  In response, Michael Pray ("Pray"), Software Business
26   Executive, Pacific Northwest, praised Schwarzkopf's work on the Cisco deal, and then said

COMPLAINT

5

1   that he thought the deal should close in the first half of 2007. Pray then said that he was

2   going to call Steve Mills ("Mills"), the Executive Vice President of Sales for IBM, and ask him to

3   contact the Chief Financial Officer at Cisco, with whom Mills had a relationship, in order to

4   help close the Cisco deal.

5         29. On information and belief, after the meeting, Pray called Mills, and asked Mills to

6   try to use his contacts at Cisco in order to try to close the Cisco deal by the end of June 2007.

7         30. On information and belief, Mills made two phone calls to Cisco regarding the deal

8   that Schwarkopf had put together. The first call was to the Chief Financial Officer, and the

9   second call was to the Chief Information Officer. During those calls, Mills suggested that

10   Cisco should complete the proposed purchase of Websphere Portal software and related

11   services by June of 2007.

12         31. Following Mills' calls to Cisco executives, Schwarzkopf was told that Cisco had

13   agreed to the deal. Subsequently, Schwarzkopf met with AnneMarie Yap ("Yap"), the Senior

14   Manager, Information Technologies, at Cisco, in order to discuss the exact terms of the deal.

15         32. Yap told Schwarzkopf that she had received approval to purchase Websphere

16   Portal software and any other Lotus Brand software that Cisco needed to maximize efficacy of

17   the Websphere Portal software, even if the total contract was in excess of $18 million.

18         33. Around the same time that Schwarzkopf learned that the Cisco deal likely would

19   close by June of 2007, Schwarzkopf was told by a co-worker that IBM "capped" commissions.

20         34. In order to determine whether IBM actually "capped" commissions on sales, on or

21   about April 6, 2007, Schwarzkopf sent an email to Whit Hardin ("Hardin"), of Sales Incentives/

22   Software Group/ Sales Operations, and specifically inquired whether IBM had a "200% cap on

23   any one deal whereby I am not eligible for commissions beyond 200%."

24         35. Later that same day, Hardin wrote back to Schwarzkopf. In his email, Hardin

25   included an excerpt from IBM's policy regarding "Significant Transactions," which states, in

26   relevant part:

1
2
3
4

**Significant Transactions:** IBM Management reserves the right review, and in its sole discretion, adjust incentive payments associated with transactions which (1) are disproportionate when compared with territory opportunity or quota size; or for which (2) the incentive payments are disproportionate when compared with the individual's contribution towards the transactions."

5

In explaining the implementation of this clause, Hardin wrote:

6
7
8
9

SWG [Software Group] has used a standardized approach to this policy in the past which was referred to as the "200% Rule". The executive team is looking to institute a comparable consistent approach for 2007 on how managers will administer the Significant Transaction clause, but it has not yet been fully approved and announced. So, managers are expected to and have the ability to adjust either how much revenue flows to a given rep or the final commission payment based on the clause.

10

Finally, Hardin provided Schwarzkopf with information that would allow him to use the

11

"earnings estimator" in order to calculate his commission.

12

36. Following his receipt of the email from Hardin, Schwarzkopf contacted Jolee

13

Blackman ("Blackman"), Portal and Collaboration Sales Manager for the Pacific Northwest, to

14

whom he reported. Schwarzkopf told Blackman that he was concerned that if he completed

15

the Cisco deal, he would not get paid all of the commission that he was owed under the 2007

16

Plan.

17

37. On information and belief, Blackman subsequently called Dan Pitts ("Pitts"),

18

Western Region Lotus Business Unit Executive, in order to discuss Schwarkopf's concern.

19

She then followed up with an email to Pitt in which she wrote "[p]er our conversation today

20

regarding commission payment for Schwarzkopf. We need to get, in writing, a commitment to

21

pay John for the full amount earned on the Cisco transaction."

22

38. Schwarzkopf also contacted Pam Chandor ("Chandor"), Director of Websphere

23

Portal Worldwide Sales, and expressed his concern about having his commissions capped on

24

the Cisco deal. Chandor told Schwarzkopf that she would investigate the situation.

25

39. On information and belief, Chandor contacted Jason Risley ("Risley"), Workplace

26

Portal and Collaboration Software Sales Manager for the Southwest Region, in order to gather

COMPLAINT

7

1    additional information responsive to Schwarzkopf's concern that his commission on the Cisco

2    deal would be capped.

3        40. On or about April 26, 2007, Risley sent an email to Chandor and Pitts stating, in

4    relevant part:

5

6        <u>Bottom line:</u> no cap exists. IN 2H, a review of all large deals will be conducted. In my
        experience . . . most of the big deals in our brand aren't acquisition related. In addition,
        our reps are typically deeply involved in progressing these deals . . . so their role and

7        payments would be (in my mind) secure and fair.

8        41. Later that same day, Chandor sent Schwarzkopf a copy of the email form Risley. In

9    addition to forwarding the email from Risley, Chandor wrote: "maximize your deal buddy!"

10        42. Based upon his conversations with Blackman, Chandor and Pitts, and the

11    information that he had received by email, Schwarzkopf had a reasonable, good faith belief

12    that he would be paid commission on the entire Cisco deal, without being subjected to "caps"

13    or reductions in the total amount of the commission.

14        43. In reliance upon the representations made by Hardin and Blackman regarding the

15    commission structure at IBM, his conversations with Chandor and Pitts, and the emails that he

16    had received from these individuals, Schwarzkopf specifically structured the Cisco deal in

17    order to maximize revenue in the first six months of 2007.

18        44. With the goal of maximizing revenue in the first six months of 2007, Schwarzkopf

19    sent Yap a spread sheet outlining the products that Cisco should buy from IBM in order to

20    maximize the efficacy of the Websphere Portal software that it planned to purchase. This

21    spread sheet included 14 line items, for a total sale of $32 million, or approximately $14 million

22    more than the total cost of the original proposal.

23        45. Using the earnings estimator, Schwarzkopf calculated that he would earn

24    significantly in excess of $ 1 million in commission on this sale to Cisco.

25        46. On or about May 15, 2007, IBM distributed an email outlining the terms of the

26    commission plan that would become effective July 1, 2007. The email stated, in relevant part:

COMPLAINT                                    8

1

[W]e are announcing a new commission achievement calculation method for *any large*

2    *transaction that, by itself, is greater than 300% of an employee's 6 month quota*. We are
     announcing in May to allow time for the impacted population to understand the

3    implementation and to respond to question ahead of the effective date.

4    Nothing in the email stated, or implied, that this policy would apply to deals closed prior to July

5    1, 2007. On the contrary, this policy expressly stated that it was a "new" method for

6    calculating commission for any large transaction that, by itself, was greater than 300% of the

7    employee's six month quota.

8         47. No one at IBM ever told Schwarzkopf that the policy described in the May 15, 2007

9    email would apply to the Cisco deal on which he was working. Furthermore, in light of the fact

10   that the policy expressly stated that it was "new" and would go into effect on "July 1, 2007,"

11   Schwarzkopf had a reasonable, good faith belief that this policy differed from the policy that

12   would be in effect on June 30, 2007, the date upon which the Cisco deal was expected to

13   close.

14        48. Based upon Schwarzkopf's work, Cisco purchased approximately $32 million in

15   software and related services from IBM. The purchase was completed in June 2007.

16        49. At no time during the negotiation of the deal with Cisco did IBM change

17   Schwarzkopf's quota, or inform him that his commission on the deal was likely to be reduced.

18        50. Following the close of the Cisco deal, Schwarzkopf logged onto the IBM "Field

19   Management System," which reflected the commission that Schwarzkopf earned on account

20   of deals that he closed. According to the computerized Commission Statement generated by

21   IBM, Schwarzkopf was due $1,529,581.35 in commissions on account of the Cisco deal.

22        51. IBM failed and refused to pay Schwarzkopf the $1,529,581.35 reflected on his

23   commission statement. Instead, IBM paid Schwarzkopf $513,509.64 on account of the Cisco

24   deal.

25        52. When Schwarzkopf learned that IBM only intended to pay him $513,509.64 on

26   account of the Cisco deal, he immediately contacted Blackman and requested an explanation

COMPLAINT                                    9

1    for the reduction. Blackman told him that there had been some sort of mistake in his quota,

2    and that he was being paid as if he had a full year quota and there was a cap on commissions.

3        53. Schwarzkopf subsequently contacted Vlad Lebedev ("Lebedev") Software Group,

4    Business Unit Executive, Pacific Northwest, to find out why his commissions on the Cisco deal

5    had been reduced. Lebedev told Schwarzkopf that there had been a "mistake" in his

6    compensation plan, and that IBM had been sloppy in leaving Schwarzkopf with a $ 1 million

7    quota. Lebedezv did not say, or even imply, that Schwarzkopf's work on the Cisco deal was

8    inadequate, or that the Significant Transaction clause was being invoked. Furthermore,

9    Lebedev did not provide Schwarzkopf with an explanation of the methodology that IBM had

10   used in determining the amount of commission to pay him on account of the Cisco deal.

11       54. Although Schwarzkopf requested a written explanation for the reduction of his

12   commission, and the manner in which IBM had determined the amount to pay to him on

13   account of the Cisco deal, IBM failed and refused to provide him with any definitive

14   explanation.

15                          **FIRST CAUSE OF ACTION**

16                              (Breach of Contract)

17       55. Plaintiff re-alleges and incorporates by reference ¶¶ 1 through 54, above, as

18   though fully set forth herein.

19       56. As described above, in or around January 2007, Schwarzkopf and IBM entered

20   into two written contracts, known as the 2007 Incentive Plan and 2007 Quota Letter, which

21   provided for payment of commission to Schwarzkopf for products and services that he sold in

22   the first half of 2007.

23       57. In June 2007, after more than a year of working to sell Websphere Portal Software

24   to Cisco, Schwarzkopf closed the Cisco deal, which resulted in Cisco purchasing of $32 million

25   in software and services from IBM.

26

COMPLAINT                                    10

1    58.  Pursuant to the terms of the 2007 Incentive Plan and 2007 Quota Letter, and

2  according to a computerized Commission Statement generated by the IBM computers,

3  Schwarzkopf was owed $1,537,032.93 on account of the Cisco deal.

4    59.  Defendants failed and refused to pay Schwarzkopf commission on the Cisco deal

5  in accordance with the terms of the 2007 Incentive Plan and 2007 Quota Letter.

6    60.  Schwarzkopf has performed all of the covenants, conditions and obligations that

7  were his under the 2007 Incentive Plan and 2007 Quota Letter.

8    61. By failing and refusing to pay Schwarzkopf commission on the Cisco deal in

9  accordance with the terms of the 2007 Incentive Plan and 2007 Quota Letter, defendants

10  breached their contract with Schwarzkopf.

11    62.  As a direct and proximate result of defendants' breach of contract, plaintiff has

12  suffered damages in a sum in excess of the jurisdictional limits of the Superior Court.

13    WHEREFORE, plaintiff prays for judgment as is further set forth below.

14

15                    **SECOND CAUSE OF ACTION**

16            (Breach of the Covenant of Good Faith and Fair Dealing)

17    63.  Plaintiff re-alleges and incorporates by reference ¶¶ 1 through 62, above, as

18  though fully set forth herein.

19    64.  As described above, in or around January 2007, Schwarzkopf and IBM entered into

20  a two written contracts, known as the 2007 Incentive Plan and 2007 Quota Letter, which

21  provided for payment of commission to Schwarzkopf for products and services that he sold in

22  the first half of 2007.

23    65. In June 2007, after more than a year of working to sell Websphere Portal Software

24  to Cisco, Schwarzkopf closed the Cisco deal, which resulted in Cisco purchasing $32 million in

25  software and services from IBM.

26

COMPLAINT

11

1    66. In California, every contract contains a covenant of good faith and fair dealing,

2    pursuant to which the parties agree to deal fairly and in good faith with each other.  Said

3    covenant also requires that defendants refrain from acting in bad faith so as not to deprive

4    plaintiff of the benefits of the employment agreement that existed between the parties.

5        67.   Defendants breached the covenant of good faith and fair dealing contained in the

6    2007 Incentive Plan and the 2007 Quota Letter, by doing the things herein alleged, including,

7    but not limited to: 1) failing and refusing to pay Schwarzkopf's commission on the Cisco deal in

8    accordance with the terms of those contracts; and 2) unilaterally, subjectively and without

9    explanation reducing the commissions paid to Schwartzkopf on account of the Cisco deal.

10       68. Schwarzkopf has performed all of the covenants, conditions and obligations that

11   were his under the 2007 Incentive Plan and 2007 Quota Letter.

12       69. By failing and refusing to pay Schwarzkopf commission on the Cisco deal in

13   accordance with the terms of the 2007 Incentive Plan and 2007 Quota Letter, defendants

14   acted in bad faith and frustrated the benefits of the contract which they entered with

15   Schwartzkopf, and thereby breached covenant of good faith and fair dealing contained in the

16   contracts with Schwarzkopf.

17       70. As a direct and proximate result of defendants' breach of the covenant of good faith

18   and fair dealing, plaintiff has suffered damages in a sum in excess of the jurisdictional limits of

19   the Superior Court.

20       WHEREFORE, plaintiff prays for judgment as is further set forth below.

21

22

23

24

25

26

COMPLAINT                                          12

### THIRD CAUSE OF ACTION

(Fraud)

71. Plaintiff re-alleges and incorporates by reference ¶¶ 1 through 70, above, as though fully set forth herein.

72. As described above, Schwarzkopf entered into the 2007 Incentive Plan and the 2007 Quota Letter and continued to work for IBM in reliance upon representations made by defendants to the effect that his commission for sales would be based upon the terms of those contracts.

73. Furthermore, as described above, defendants, through written and oral statements made by managerial employees, represented to Schwartzkopf that the commissions that he would earn on account of the Cisco deal would not be "capped" or otherwise reduced.

74. These representations made by defendants were intentionally false and misleading, in that defendants knew or should have known that the IBM would unilaterally, subjectively, and without explanation or warning, reduce commissions paid to Schwarzkopf.

75. Defendants made these false representations for the purpose, *inter alia*, of inducing Schwarzkopf to continue working for defendants, inducing Schwarzkopf to enter into the 2007 Incentive Plan and the 2007 Quota Letter, and inducing Schwarzkopf to structure the Cisco deal in a manner calculated to maximize revenue for IBM in the first half of 2007.

76. As described above, Schwarzkopf structured the Cisco deal in a manner calculated to increase the revenue to Cisco in the first half of 2007 and in reliance upon representations made by defendants to the effect that a) he would be paid the full commission due to him on the Cisco deal pursuant to the terms of the 2007 Incentive Plan and the 2007 Quota Letter; b) his commission would be commensurate with the amounts reflected upon IBM's commissioner estimator; c) his commissions would not be capped or reduced; and d) his direct managers would be responsible for making decisions regarding the payment of his commissions.

COMPLAINT

1    77. These representations made by defendants were intentionally false and misleading,

2  in that defendants knew or should have known that a) the commissions paid to Schwarzkopf

3  on account of the Cisco deal would be significantly less than the amount provided for in the

4  2007 Incentive Plan and 2007 Quota Letter; b) the commissions paid to Schwarzkopf would be

5  significantly less than the amount reflected on IBM's commission estimator; c) Schwarzkopf's

6  direct managers would not have control over the amount of commission paid to him; and d)

7  IBM would reduce Schwarzkopf's commission without any clear explanation or justification.

8    78. As a direct and proximate result of defendants' false and misleading statements,

9  acts and omissions, Schwarzkopf has suffered damages, including both economic and

10  emotional distress damages, in a sum in excess of the jurisdictional limits of the Superior

11  Court.

12    79. In doing the things alleged herein, defendants' conduct was despicable, and

13  defendants acted towards Schwarzkopf with malice, oppression, fraud and with a willful and

14  conscious disregard of plaintiff's rights, entitling plaintiff to an award of punitive damages.

15    WHEREFORE, plaintiff prays for judgment as is further set forth below.

16                    **FOURTH CAUSE OF ACTION**

17                    (Promissory Estoppel)

18

19    80. Plaintiff re-alleges and incorporates by reference ¶¶ 1 through 79, above, as though

20  fully set forth herein.

21    81. As described above, defendants repeatedly promised Schwarzkopf that he would

22  1) be paid in accordance with the terms of the 2007 Incentive Plan and the 2007 Quota Letter;

23  2) that his commissions would be commensurate with the amounts reflected upon IBM's

24  commission calculator; 3) commissions that he would earn on account of the Cisco deal would

25  not be "capped" or otherwise reduced; and 4) his direct managers would be responsible for

26  making decisions regarding the payment of his commissions.

COMPLAINT
                                14

1    82. Defendants knew, or should have known, that these promises were false and

2  misleading, in that defendants knew or should have known that the IBM would unilaterally,

3  subjectively, and without explanation or warning, reduce commissions paid to Schwarzkopf.

4    83. Defendants made these promises false representations for the purpose, *inter alia*,

5  of inducing Schwarzkopf to continue working for defendants, inducing Schwarzkopf to enter

6  into the 2007 Incentive Plan and the 2007 Quota Letter, and inducing Schwarzkopf to structure

7  the Cisco deal in a manner calculated to maximize revenue for IBM in the first half of 2007.

8    84. As described above, Schwarzkopf structured the Cisco deal in a manner calculated

9  to increase the revenue to Cisco in the first half of 2007 and in justifiable reliance upon

10  promises made by defendants to the effect that a) he would be paid the full commission due to

11  him on the Cisco deal pursuant to the terms of the 2007 Incentive Plan and the 2007 Quota

12  Letter; b) his commission would be commensurate with the amounts reflected upon IBM's

13  commissioner estimator; c) his commissions would not be capped or otherwise reduced; and

14  d) his direct managers would be responsible for making decisions regarding the payment of

15  his commissions.

16    85. These promises made by defendants were intentionally false and misleading, in that

17  defendants knew or should have known that a) the commissions paid to Schwarzkopf on

18  account of the Cisco deal would be significantly less than the amount provided for in the 2007

19  Incentive Plan and 2007 Quota Letter; b) the commissions paid to Schwarzkopf would be

20  significantly less than the amount reflected on IBM's commission estimator; c) Schwarzkopf's

21  direct managers would not have control over the amount of commission paid to him; and d)

22  IBM would reduce Schwarzkopf's commission without any clear explanation or justification.

23    86. By failing and refusing to pay Schwarzkopf commission due to him on the Cisco

24  deal pursuant to the terms of the 2007 Incentive Plan and the 2007 Quota Letter, defendants

25  breached the promises made to Schwarzkopf and denied him the opportunity to obtain the

26  benefits of the employment relationship.

COMPLAINT

15

87. As a direct and proximate result of defendants' alleged conduct, plaintiff has suffered damages in an amount of which exceeds the jurisdictional minimum of the Superior Court.

## FIFTH CAUSE OF ACTION

(Violation of Business and Professions Code Section 17200)

88. Plaintiff realleges and incorporates by reference ¶¶ 1 through 87, above, as though fully set forth herein.

89. California Business and Professions Code § 17200 prohibits any business practice or act that is unlawful, unfair or fraudulent.

90. As described above, on information and belief, defendants have a policy and practice of refusing to pay employees commissions that are due and owing to them, pursuant to the terms of the company's Incentive Plans and Quota Letters.

91. As described above, on information and belief, defendants have a policy and practice of refusing to provide employees with complete and accurate information regarding potential reductions of, and limitations, on, commission.

92. As described above, on information and belief, defendants have a policy and practice of refusing to provide employees with complete and accurate information regarding the reasons for reducing their commissions.

93. As described above, on information and belief, defendants provide employees with a computerized "commission estimator" and instruct the employees to use this estimator to calculate the commissions that they will be paid on sales. However, the commission estimator does not provide employees with accurate information regarding the commissions that they will be paid.

94. As described above, defendants refused to pay Schwarzkopf commissions that were due and owing on account of the Cisco deal.

COMPLAINT

16

95. As described above, defendants unilaterally, subjectively and without explanation reduced the commission that was paid to Schwarzkopf on account of the Cisco deal.

96. Defendants' conduct is part of an ongoing policy and practice designed to, and with the effect of, depriving employees, including Schwarzkopf, of commission that they earned and to which they were entitled.

97. The failure and refusal to pay employees commission that are due and owing is in violation of California State law, including, but not limited to, California Labor Code § 206.5.

98. By committing the acts described in this complaint, including but not limited to, failing and refusing to pay Schwarzkopf and other employees commission that were due and owing, making false and misleading representations to Schwarzkopf regarding the payment of his commission, and reducing his commissions on the Cisco deal unilaterally, subjectively and without explanation, defendants engaged in unlawful, unfair, fraudulent, dishonest, deceptive and oppressive conduct, in violation of Business and Professions Code § 17200.

99. Defendants' acts and omissions, as alleged herein, are unfair to Schwarzkopf, and of defendants' employees who were subjected to these policies and practices, and the general public and on competitors.

100. Defendants have the ability to cease their unlawful business practice without any diminution of their business. Defendants' conduct as alleged herein is severely harmful to their employees, to the general public and to competitors and has no benefit to either the defendants or the general public.

101. As a direct and proximate result of Defendants' conduct, Schwarzkopf and other employees have suffered damages, including economic losses, in an amount in excess of the jurisdictional limits of the Superior court.

WHEREFORE, plaintiff prays for judgment as is further set forth below.

### PRAYER FOR RELIEF

1

2    Plaintiff prays for relief as follows:

3       1. For general damages according to proof;

4       2. For special damages according to proof;

5       3. For punitive damages with respect to the Third and Fifth Causes of Action;

6       4. For injunctive relief with respect to the Fourth and Fifth Causes of Action;

7       5. For attorneys fees pursuant to Labor Code Section 218.5 and Civil Code Section

8  1194, with respect to the Fifth Cause of Action;

9       6. For costs of suit;

10      7. For interest at the maximum legal rate on all sums awarded;

11      8. For such other relief that the Court deems just and proper.

12

13  Dated: April 21, 2008       VINICK LAW FIRM

14

15                   By:_____
                            Sharon R. Vinick

16                   Attorneys for John Schwarzkopf_____

17

18

19

20

21

22

23

24

25

26

1

## JURY TRIAL DEMANDED

2

    John Schwarzkopf, plaintiff herein, requests a trial by jury on each cause of action for

3

which a trial by jury is proper.

4

5

Dated: April 21, 2008

VINICK LAW FIRM

6

7

By: _____

Sharon R. Vinick

8

Attorneys for John Schwarzkopf

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT

Exhibit

A

 **Field Management System**

## Print Letter

**IBM Confidential**

This is 1H only

## Letter dates/status:

| | |
|---|---|
| Accepted date: | 30/01/2007 |
| Status: | Accepted |
| HR status: | HR approved |

## Employee details:

| | |
|---|---|
| Incentive plan year: | 2007 |
| Name: | JOHN B. SCHWARZKOPF |
| Serial number: | L04975 |
| Country: | 897 - UNITED STATES |
| Organization: | SSW - Software Group |
| Business unit: | WSWP - SSW/Sales/West/Pacific NW |
| Department: | X8EA |
| First plan date of current year: | 01/01/2007 |
| Manager of eligible employee - Name: | Jolee R. Blackman |
| Manager of eligible employee - Serial: | 4A3930 |
| Manager of eligible employee - Cty: | 897 - UNITED STATES |
| Manager of eligible employee - Second level: | Vladimir Lebedev/Seattle/IBM@IBMUS |
| Role: | Rep WPLC Portfolio |
| Role level: | Eligible employee |
| Assigned coverage model: | CCOV - CROSS-COVERAGE |
| Coverage id: | |
| Preferred route to market: | $5 - FTF (FACE TO FACE) |

## Plan details:

| | | | |
|---|---|---|---|
| Plan start date: | 01/01/2007 | Plan end date: | 30/06/2007 |
| Plan type/name: | SW211 - 55/45 - 75/25 | | |
| Plan calc type: | % of TI | | |
| Plan length: | Semi-Annual | | |
| Base pay %: | 54.67 | Target incentive %: | 45.33 |
| OTE %: | 150.00 | Full year/assigned: | F |

## Incentive element details:

| **PRI** Revenue | | | |
|---|---|---|---|
| Weight: | 75.00 % of TI | Ind/ Small team/ Large team: | I |
| Main / overlay: | P | Currency Ind: | P |
| Measurable via system: | | | |

| Total quota: | 968,450.00 |
|---|---|
| Unit of measure: | Revenue |

Field Management System (FMS) - Filer

Page 2 of 11

| Territory description in English: | Lotus sales I/A rep supporting Jennifer Powell (Gap), Dan Rolla (Cisco), Christine Cowen, and Dan Coffey (EBay) |
|---|---|

## Territory and measurement details:

Territory Detail for: Revenue

| Territory set ID | Territory details | | Terr type | Terr Op | Terr data | Incl/ Excl |
|---|---|---|---|---|---|---|
| AGFILTERDFLTBR | Set name: | US DFLT FILTER BRAND | BP_ACCT_TYPE_CODE | = | D | E |
| | Set percent: | 100.00 | COVERAGE_TYPE | = | | |
| | Or-Incl/And-Incl/Excl: | A | COVERAGE_TYPE | = | I | I |
| | Subset ID: | CAAREADFLTBR | COVERAGE_TYPE | = | | |
| | Subset name: | CA DFLT FILTER BR AREA | CTRYNUM | = | 343 | I |
| | | | CTRYNUM | = | 545 | I |
| | Subset percent: | 100.00 | CTRYNUM | = | 546 | I |
| | Or-Incl/And-Incl/Excl: | O | CTRYNUM | = | 613 | I |
| | | | CTRYNUM | = | 629 | I |
| | | | CTRYNUM | = | 631 | I |
| | | | CTRYNUM | = | 649 | I |
| | | | CTRYNUM | = | 655 | I |
| | | | CTRYNUM | = | 661 | I |
| | | | CTRYNUM | = | 686 | I |
| | | | CTRYNUM | = | 781 | I |
| | | | CTRYNUM | = | 813 | I |
| | | | CTRYNUM | = | 815 | I |
| | | | CTRYNUM | = | 869 | I |
| AGFILTERDFLTBR | Set name: | US DFLT FILTER BRAND | Terr type | Terr Op | Terr data | Incl/ Excl |
| | Set percent: | 100.00 | AREA | = | 79 | I |
| | Or-Incl/And-Incl/Excl: | | AREA | = | 92 | I |
| | | | BMDIV | = | 86 | I |
| | Subset ID: | USAREABLUEGENECELL | BP_ACCT_TYPE_CODE | = | D | I |
| | Subset name: | US DFLT FILTER BR CL AREA | COVERAGE_TYPE | = | A | I |
| | | | COVERAGE_TYPE | = | | |
| | Subset percent: | 100.00 | COVERAGE_TYPE | = | T | I |
| | Or-Incl/And-Incl/Excl: | O | CTRYNUM | = | 857 | I |
| | | | CTRYNUM | = | 912 | I |
| AGFILTERDFLTBR | Set name: | US DFLT FILTER BRAND | Terr type | Terr Op | Terr data | Incl/ Excl |
| | Set percent: | 100.00 | AREA | = | 01 | I |
| | Or-Incl/And-Incl/Excl: | A | AREA | = | 02 | I |
| | | | AREA | = | 04 | I |
| | Subset ID: | USAREADFLTBR | AREA | = | 05 | I |
| | Subset name: | US DFLT FILTER BR AREA | AREA | = | 07 | I |
| | | | AREA | = | 10 | I |
| | Subset percent: | 100.00 | AREA | = | 11 | I |
| | Or-Incl/And-Incl/Excl: | O | AREA | = | 13 | I |
| | | | AREA | = | 21 | I |
| | | | AREA | = | 27 | I |
| | | | AREA | = | 36 | I |
| | | | AREA | = | 50 | I |
| | | | AREA | = | 65 | I |
| | | | BP_ACCT_TYPE_CODE | = | D | E |
| | | | COVERAGE_ID | = | 0000453 | E |

| | | Terr type | Terr Op | Terr data | Incl/Excl |
|---|---|---|---|---|---|
| | | COVERAGE_TYPE | = | A | I |
| | | COVERAGE_TYPE | = | I | I |
| | | COVERAGE_TYPE | = | I | I |
| | | CTRYNUM | = | 897 | I |
| | | CTRYNUM | = | 912 | I |

| AGFILTERDFLTBR | Set name: US DFLT FILTER BRAND | Terr type | Terr Op | Terr data | Incl/Excl |
|---|---|---|---|---|---|
| | Set percent: 100.00 | ACTION_CODE | = | GBATFL | I |
| | Or-Incl/And-Incl/Excl: A | COVERAGE_ID | = | 0000453 | I |
| | Subset ID: USATAFLBR | CTRYNUM | = | 897 | I |
| | Subset name: US DFLT FILTER BR ATAFL | CTRYNUM | = | 912 | I |
| | | SYS_ID | = | G103 | I |
| | Subset percent: 100.00 | SYS_ID | = | WS01 | I |
| | Or-Incl/And-Incl/Excl: | SYS_ID | = | WS03 | I |

| AGFILTERDFLTBR | Set name: US DFLT FILTER BRAND | Terr type | Terr Op | Terr data | Incl/Excl |
|---|---|---|---|---|---|
| | Set percent: 100.00 | ACTION_CODE | = | | I |
| | Or-Incl/And-Incl/Excl: A | COVERAGE_TYPE | = | I | I |
| | | COVERAGE_TYPE | = | I | I |
| | Subset ID: USATAFLBREXCL | COVERAGE_TYPE | = | I | I |
| | Subset name: US DFLT FILTER BR ATAFL EXCL | CTRYNUM | = | 897 | I |
| | | CTRYNUM | = | 912 | I |
| | Subset percent: 100.00 | SYS_ID | = | WS03 | I |
| | Or-Incl/And-Incl/Excl: E | | | | |

| AGFILTERDFLTBR | Set name: US DFLT FILTER BRAND | Terr type | Terr Op | Terr data | Incl/Excl |
|---|---|---|---|---|---|
| | Set percent: 100.00 | CTRYNUM | = | 897 | I |
| | Or-Incl/And-Incl/Excl: | CTRYNUM | = | 912 | I |
| | | CUSTNUM | = | 2504890 | I |
| | | CUSTNUM | = | 4660931 | I |
| | Subset ID: USDACCNOEXCLUDEER | CUSTNUM | = | 4756281 | I |
| | Subset name: US DFLT FILTER BR EXCLUDE | CUSTNUM | = | 4845281 | I |
| | | CUSTNUM | = | 4854758 | I |
| | Subset percent: 100.00 | CUSTNUM | = | 4854759 | I |
| | Or-Incl/And-Incl/Excl: E | CUSTNUM | = | 4858542 | I |
| | | SYS_ID | = | REV1 | I |
| | | SYS_ID | = | REV2 | I |

| AGFILTERDFLTBR | Set name: US DFLT FILTER BRAND | Terr type | Terr Op | Terr data | Incl/Excl |
|---|---|---|---|---|---|
| | Set percent: 100.00 | ACTION_CODE | = | | I |
| | Or-Incl/And-Incl/Excl: A | COVERAGE_ID | = | 0000453 | E |
| | | COVERAGE_TYPE | = | A | I |
| | Subset ID: USINTLBRAND | COVERAGE_TYPE | = | I | I |
| | Subset name: US DFLT FILTER BR INTL | COVERAGE_TYPE | = | T | I |
| | | CTRYNUM | = | 897 | E |
| | Subset percent: 100.00 | CTRYNUM | = | 912 | E |
| | Or-Incl/And-Incl/Excl: O | SYS_ID | = | CARS | E |
| | | SYS_ID | = | G101 | E |
| | | SYS_ID | = | WARN | E |
| | | SYS_ID | = | WS03 | E |

| AGFILTERDFLTBR | Set name: US DFLT FILTER BRAND | Terr type | Terr Op | Terr data | Incl/Excl |
|---|---|---|---|---|---|
| | | AREA | = | 21 | I |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Set percent: | 100.00 | | BMDIV | = | 88 | |
| | Or-Incl/And-<br>Incl/Excl: | A | | CHANID | = | G | I |
| | | | | CHANID | = | H | I |
| | Subset ID: | USLENDEALER | | CHANID | = | J | I |
| | Subset name: | US LENDEALER<br>FILTER EXCL | | CHANID | = | K | I |
| | | | | CTRYNUM | = | 897 | I |
| | Subset<br>percent: | 100.00 | | CTRYNUM | = | 512 | I |
| | Or-Incl/And-<br>Incl/Excl: | E | | SYS_ID | = | REV1 | I |
| | | | | SYS_ID | = | REV2 | I |
| AGFILTERDFLTBR | Set name: | US DFLT FILTER<br>BRAND | | Terr type | Terr<br>Op | Terr<br>data | Incl/<br>Excl |
| | Set percent: | 100.00 | | ACCT_YR | = | 2007 | I |
| | Or-Incl/And-<br>Incl/Excl: | A | | SYS_FILE_TYPE | = | MANAD | I |
| | Subset ID: | USMCLMDEFAULT | | SYS_ID | = | MCLM | I |
| | Subset name: | INFOPRINT MCLMS | | | | | |
| | Subset<br>percent: | 100.00 | | | | | |
| | Or-Incl/And-<br>Incl/Excl: | O | | | | | |
| AG897EWSWP553T010000 | Set name: | SPEC SCHWARZKOPF | | Terr type | Terr<br>Op | Terr<br>data | Incl/<br>Excl |
| | Set<br>percent: | 100.00 | | ACTION_CODE | = | GADTFL | E |
| | Or-<br>Incl/And-<br>Incl/Excl: | A | | ACTION_CODE | = | GBATFL | E |
| | | | | AFFILIATE_NBR | = | 0036643 | I |
| | Subset ID: | AG897CHAWSWP553001 | | AFFILIATE_NBR | = | 0042609 | I |
| | Subset<br>name: | LOTUS SCHWARZKOPF | | AFFILIATE_NBR | = | 0141044 | I |
| | | | | AFFILIATE_NBR | = | 0152909 | I |
| | Subset<br>percent: | 100.00 | | AFFILIATE_NBR | = | 0534827 | I |
| | Or-<br>Incl/And-<br>Incl/Excl: | O | | AFFILIATE_NBR | = | 0599644 | I |
| | | | | AFFILIATE_NBR | = | 0641414 | I |
| | | | | AFFILIATE_NBR | = | 0861742 | I |
| | | | | AFFILIATE_NBR | = | 1510659 | I |
| | | | | AFFILIATE_NBR | = | 1763735 | I |
| | | | | AFFILIATE_NBR | = | 2401135 | I |
| | | | | AFFILIATE_NBR | = | 2640539 | I |
| | | | | AFFILIATE_NBR | = | 2693001 | I |
| | | | | AFFILIATE_NBR | = | 3097485 | I |
| | | | | AFFILIATE_NBR | = | 3510946 | I |
| | | | | AFFILIATE_NBR | = | 3604602 | I |
| | | | | AFFILIATE_NBR | = | 4787976 | I |
| | | | | AFFILIATE_NBR | = | 5217351 | I |
| | | | | AFFILIATE_NBR | = | 5674017 | I |
| | | | | AFFILIATE_NBR | = | 5768687 | I |
| | | | | AFFILIATE_NBR | = | 6403337 | I |
| | | | | AFFILIATE_NBR | = | 6404081 | I |
| | | | | AFFILIATE_NBR | = | 6797591 | I |
| | | | | AFFILIATE_NBR | = | 7064052 | I |
| | | | | AFFILIATE_NBR | = | 7315135 | I |
| | | | | AFFILIATE_NBR | = | 7337240 | I |
| | | | | AFFILIATE_NBR | = | 7845274 | I |
| | | | | AFFILIATE_NBR | = | 7984300 | I |
| | | | | AFFILIATE_NBR | = | 8124033 | I |
| | | | | AFFILIATE_NBR | = | 8732528 | I |
| | | | | AFFILIATE_NBR | = | 9431007 | I |
| | | | | AFFILIATE_NBR | = | 9904030 | I |

| | | | | |
|---|---|---|---|---|
| | | COVERAGE_ID = | 0000033 | I |
| | | COVERAGE_TYPE = | A | I |
| | | COVERAGE_TYPE = | I | |
| | | CTRYNUM = | 897 | I |
| | | CTRYNUM = | 912 | I |

| AG897EWSWP553T010000 | Set name: | SPEC SCHWARZKOPF | Terr type | Terr Op | Terr data | Incl/Excl |
|---|---|---|---|---|---|---|
| | Set percent: | 100.00 | ACTION_CODE | = | GBATFL | I |
| | Or-Incl/And-Incl/Excl: | A | COA_LVL1 | = | SOFTWARE | I |
| | | | COVERAGE_TYPE | = | A | I |
| | | | COVERAGE_TYPE | = | I | |
| | Subset ID: | AG897CHAWSWP553002 | CREF_AFFILIATE_NBR = | | 0036643 | I |
| | Subset name: | LOTUS SCHWARZKOPF IGS BLUE | CREF_AFFILIATE_NBR = | | 0042609 | I |
| | | | CREF_AFFILIATE_NBR = | | 0141044 | I |
| | Subset percent: | 100.00 | CREF_AFFILIATE_NBR = | | 0143645 | I |
| | Or-Incl/And-Incl/Excl: | O | CREF_AFFILIATE_NBR = | | 0152909 | I |
| | | | CREF_AFFILIATE_NBR = | | 0534827 | I |
| | | | CREF_AFFILIATE_NBR = | | 0599644 | I |
| | | | CREF_AFFILIATE_NBR = | | 0641414 | I |
| | | | CREF_AFFILIATE_NBR = | | 0861742 | I |
| | | | CREF_AFFILIATE_NBR = | | 1510659 | I |
| | | | CREF_AFFILIATE_NBR = | | 1763735 | I |
| | | | CREF_AFFILIATE_NBR = | | 2401135 | I |
| | | | CREF_AFFILIATE_NBR = | | 2640539 | I |
| | | | CREF_AFFILIATE_NBR = | | 2693001 | I |
| | | | CREF_AFFILIATE_NBR = | | 3097485 | I |
| | | | CREF_AFFILIATE_NBR = | | 3510946 | I |
| | | | CREF_AFFILIATE_NBR = | | 3604602 | I |
| | | | CREF_AFFILIATE_NBR = | | 4787976 | I |
| | | | CREF_AFFILIATE_NBR = | | 5217351 | I |
| | | | CREF_AFFILIATE_NBR = | | 5674011 | I |
| | | | CREF_AFFILIATE_NBR = | | 5768687 | I |
| | | | CREF_AFFILIATE_NBR = | | 6403337 | I |
| | | | CREF_AFFILIATE_NBR = | | 6404081 | I |
| | | | CREF_AFFILIATE_NBR = | | 6797591 | I |
| | | | CREF_AFFILIATE_NBR = | | 7064052 | I |
| | | | CREF_AFFILIATE_NBR = | | 7315135 | I |
| | | | CREF_AFFILIATE_NBR = | | 7337240 | I |
| | | | CREF_AFFILIATE_NBR = | | 7645574 | I |
| | | | CREF_AFFILIATE_NBR = | | 7984300 | I |
| | | | CREF_AFFILIATE_NBR = | | 8124033 | I |
| | | | CREF_AFFILIATE_NBR = | | 8732528 | I |
| | | | CREF_AFFILIATE_NBR = | | 9431007 | I |
| | | | CREF_AFFILIATE_NBR = | | 9904030 | I |
| | | | CTRYNUM | = | 897 | I |
| | | | CTRYNUM | = | 912 | I |
| | | | MAJOR | = | 332 | E |

| USTPPSSWRSWM1PRI | Set name: | USTPP-SSW Geo Sales PRI | Terr type | Terr Op | Terr data | Incl/Excl |
|---|---|---|---|---|---|---|
| | Set percent: | 100.00 | ACTION_CODE = | | GADTFL | I |
| | Or-Incl/And-Incl/Excl: | | | | | |
| | Subset ID: | USTPPGADTFL | | | | |
| | Subset name: | USTPPGADTFL | | | | |
| | Subset percent: | 100.00 | | | | |
| | Or-Incl/And- | O | | | | |

| | Incl/Excl: | | Terr type | Terr Op | Terr data | Incl/Excl |
|---|---|---|---|---|---|---|
| USIPPSSWRSWM1PRI | Set name: | US IPP SSW Geo Sales PRI | ACTION_CODE= | | GBATFL | I |
| | Set percent: | 100.00 | | | | |
| | Or-Incl/And-Incl/Excl: | A | | | | |
| | Subset ID: | USIPPRGBATFL | | | | |
| | Subset name: | USIPPRGBATFL | | | | |
| | Subset percent: | 100.00 | | | | |
| | Or-Incl/And-Incl/Excl: | O | | | | |
| USIPPSSWRSWM1PRI | Set name: | US IPP SSW Geo Sales PRI | Terr type | Terr Op | Terr data | Incl/Excl |
| | Set percent: | 100.00 | ACTION_CODE= | | | |
| | Or-Incl/And-Incl/Excl: | | ACTION_CODE= | | SSWBP2 | I |
| | Subset ID: | WWIPPR15 | ACTION_CODE= | | SSWBP3 | I |
| | Subset name: | WWIPPR15 | ACTION_CODE= | | WCBBP | I |
| | Subset percent: | 100.00 | ACTION_CODE= | | WCTBP2 | I |
| | Or-Incl/And-Incl/Excl: | | ACTION_CODE= | | WCTBP3 | I |
| | | | ACTION_CODE= | | WSMBP2 | I |
| | | | ACTION_CODE= | | WSMBP3 | I |
| WWFUSRAREABRANDV1 | Set name: | WW US BRAND REVENUE | Terr type | Terr Op | Terr data | Incl/Excl |
| | Set percent: | 100.00 | BMDIV | = | 9E | I |
| | Or-Incl/And-Incl/Excl: | A | BMDIV | = | 9X | I |
| | | | BMDIV | = | 92 | I |
| | Subset ID: | WWINFOPRTARLBEXCL | SYS_ID | = | CARS | I |
| | Subset name: | INFOPRINT ARLB EXCLUSION | SYS_ID | = | WARN | I |
| | Subset percent: | 100.00 | | | | |
| | Or-Incl/And-Incl/Excl: | E | | | | |
| WWFUSRAREABRANDV1 | Set name: | WW US BRAND REVENUE | Terr type | Terr Op | Terr data | Incl/Excl |
| | Set percent: | 100.00 | ACTION_CODE= | | GBATFL | I |
| | Or-Incl/And-Incl/Excl: | | CTRYNUM | = | 897 | I |
| | | | CTRYNUM | = | 912 | I |
| | Subset ID: | WWFSSRATAFLBRAND | SYS_ID | = | G103 | I |
| | Subset name: | US ATAFL CODE | SYS_ID | = | WS01 | I |
| | Subset percent: | 100.00 | SYS_ID | = | WS03 | I |
| | Or-Incl/And-Incl/Excl: | O | | | | |
| WWFUSRAREABRANDV1 | Set name: | WW US BRAND REVENUE | Terr type | Terr Op | Terr data | Incl/Excl |
| | Set percent: | 100.00 | BMDIV | = | 88 | I |
| | Or-Incl/And-Incl/Excl: | A | BMDIV | = | 92 | I |
| | | | SYS_ID | = | WS03 | I |
| | Subset ID: | WWFSSRBLUEDLRS | | | | |
| | Subset name: | WW BLUE DOLLARS | | | | |

| | | | Terr type | Terr Op | Terr data | Incl/Excl |
|---|---|---|---|---|---|---|
| | Subset percent: | 100.00 | | | | |
| | Or-Incl/And-Incl/Excl: | E | | | | |
| WWFUSRAREABRANDV1 | Set name: | WW US BRAND REVENUE | CTRYNUM | = | 897 | I |
| | Set percent: | 100.00 | CTRYNUM | = | 912 | I |
| | Or-Incl/And-Incl/Excl: | A | SYS_FILE_TYPE | = | PCAC* | E |
| | Subset ID: | WWFSSRBRANDAREA | SYS_FILE_TYPE | = | PCMC* | E |
| | Subset name: | US BRAND AREA | SYS_FILE_TYPE | = | PNAC* | E |
| | Subset percent: | 100.00 | SYS_FILE_TYPE | = | PNMC* | E |
| | Or-Incl/And-Incl/Excl: | O | SYS_FILE_TYPE | = | RNAC* | E |
| | | | SYS_FILE_TYPE | = | RNMC* | E |
| | | | SYS_ID | = | WS03 | E |
| WWFUSRAREABRANDV1 | Set name: | WW US BRAND REVENUE | ACCT | = | 3020120 | I |
| | Set percent: | 100.00 | ACCT | = | 3020180 | I |
| | Or-Incl/And-Incl/Excl: | A | ACCT | = | 3020200 | I |
| | Subset ID: | WWFSSRMKEXCL | ACCT | = | 3820350 | I |
| | Subset name: | US REMARKETING EXCL | BMDIV | = | 84 | I |
| | Subset percent: | 100.00 | CTRYNUM | = | 897 | I |
| | Or-Incl/And-Incl/Excl: | E | CTRYNUM | = | 912 | I |
| | | | SYS_ID | = | REV1 | I |
| WWFUSRAREABRANDV1 | Set name: | WW US BRAND REVENUE | ACTION_CODE | = | | I |
| | Set percent: | 100.00 | CTRYNUM | = | 897 | E |
| | Or-Incl/And-Incl/Excl: | A | CTRYNUM | = | 912 | E |
| | Subset ID: | WWFSSUSINTLBRAND | SYS_ID | = | CARS | E |
| | Subset name: | US INTL EXCLUSION | SYS_ID | = | G101 | E |
| | Subset percent: | 100.00 | SYS_ID | = | WARN | E |
| | Or-Incl/And-Incl/Excl: | O | SYS_ID | = | WS03 | E |
| WWFUSRAREABRANDV1 | Set name: | WW US BRAND REVENUE | ACCT | = | 3100600 | I |
| | Set percent: | 100.00 | ACCT | = | 4100600 | I |
| | Or-Incl/And-Incl/Excl: | A | BMDIV | = | 92 | I |
| | Subset ID: | WWFSSUSPRTSUPEXCL | CTRYNUM | = | 897 | I |
| | Subset name: | US PRINTER SUPPLIES EXCL | CTRYNUM | = | 912 | I |
| | Subset percent: | 100.00 | | | | |
| | Or-Incl/And-Incl/Excl: | E | | | | |
| WWM00388 | Set name: | WW SSW | Terr type | Terr Op | Terr data | Incl/Excl |

| | | | |
|---|---|---|---|
| | Measurement # 00388 | ACCT = 3300600 E | |
| | Set percent: 100.00 | BMDIV = 7H | |
| | Or- D | MAJOR = 330 I | |
| | Incl/And- | SWPRODFAM = FFORMS | |
| | Incl/Excl: | | |
| | Subset ID: SSWM00380FFORMS | | |
| | Subset SSWM00380-FFORMS | | |
| | name: | | |
| | Subset 100.00 | | |
| | percent: | | |
| | Or- O | | |
| | Incl/And- | | |
| | Incl/Excl: | | |

| WWM00388 | Set WW SSW Measurement # | Terr type Terr Op Terr data Incl/-Excl | |
|---|---|---|---|
| | name: 00388 | BMDIV = 80 I | |
| | Set 100.00 | MAJOR = 354 I | |
| | percent: | | |
| | Or- D | | |
| | Incl/And- | | |
| | Incl/Excl: | | |
| | Subset SSWM00380LOTSEDSVC | | |
| | ID: | | |
| | Subset SSWM00380LOTUSEDSVC | | |
| | name: | | |
| | Subset 25.00 | | |
| | percent: | | |
| | Or- O | | |
| | Incl/And- | | |
| | Incl/Excl: | | |

| WWM00388 | Set name: WW SSW Measurement # 00388 | Terr type Terr Op Terr data Incl/-Excl | |
|---|---|---|---|
| | | ACCT = 3300600 E | |
| | Set 100.00 | BMDIV = 7H | |
| | percent: | MAJOR = 330 I | |
| | Or- D | SWBUSUNIT = OMNIFIND | |
| | Incl/And- | | |
| | Incl/Excl: | | |
| | Subset ID: SSWM003800MNIFIND | | |
| | Subset SSWM00380-OMNIFIND | | |
| | name: | | |
| | Subset 100.00 | | |
| | percent: | | |
| | Or- O | | |
| | Incl/And- | | |
| | Incl/Excl: | | |

| WWM00388 | Set name: WW SSW Measurement # 00388 | Terr type Terr Op Terr data Incl/-Excl | |
|---|---|---|---|
| | | ACCT = 3590720 I | |
| | Set percent: 100.00 | BMDIV = 80 I | |
| | Or-Incl/And- D | | |
| | Incl/Excl: | | |
| | Subset ID: SSWM00388WPLC | | |
| | Subset SSWM00388-WPLC | | |
| | name: | | |
| | Subset 25.00 | | |
| | percent: | | |
| | Or-Incl/And- O | | |
| | Incl/Excl: | | |

| WWM00388 | Set name: WW SSW | Terr type Terr Op Terr data Incl/-Excl | |
|---|---|---|---|

| | | |
|---|---|---|

**(Top partial row - faded)**

| | Measurement # 00388 | ACCT = 3300600 E |
|---|---|---|
| | Set percent: 100.00 | BMDIV = 80 I |
| | Or- D Incl/And- Incl/Excl: | MAJOR = 330 I |
| | | SWOPSYS = EPOEM E |
| | Subset ID: SSWM00388WPLC1 | |
| | Subset name: SSWM00388-WPLC#1 | |
| | Subset percent: 100.00 | |
| | Or- O Incl/And- Incl/Excl: | |

| | | |
|---|---|---|
| WWM00388 | Set name: WW SSW Measurement # 00388 | Terr type Terr Op Terr data Incl/Excl |
| | | BMDIV = 80 I |
| | Set percent: 100.00 | HWPLATFORM = S/390 E |
| | Or- D Incl/And- Incl/Excl: | MAJOR = 332 I |
| | | SWOPSYS = EPOEM E |
| | Subset ID: SSWM00388WPLC2 | |
| | Subset name: SSWM00388-WPLC#2 | |
| | Subset percent: 100.00 | |
| | Or- O Incl/And- Incl/Excl: | |

| | | |
|---|---|---|
| WWM00388 | Set name: WW SSW Measurement # 00388 | Terr type Terr Op Terr data Incl/Excl |
| | | BMDIV = 80 I |
| | Set percent: 100.00 | MAJOR = 357 I |
| | Or- D Incl/And- Incl/Excl: | |
| | Subset ID: SSWM00388WPLC5 | |
| | Subset name: SSWM00388-WPLC#5 | |
| | Subset percent: 25.00 | |
| | Or- O Incl/And- Incl/Excl: | |

| | | |
|---|---|---|
| WWM00388 | Set name: WW SSW Measurement # 00388 | Terr type Terr Op Terr data Incl/Excl |
| | | ACCT_YR = 2007 I |
| | Set percent: 100.00 | SYS_FILE_TYPE = MANADJ I |
| | Or-Incl/And- D Incl/Excl: | SYS_ID = MCLM I |
| | Subset ID: WWMCLMDEFAULT | |
| | Subset name: MCLM DEFAULT | |
| | Subset percent: 100.00 | |
| | Or-Incl/And- O Incl/Excl: | |

Measurement Detail for: Revenue

| Meas type | Inv min amount | Inv max amount | Payment indc |
|---|---|---|---|
| A/R LOOK BACK | Not limited by line item amount | Not limited by line item amount | Y |
| MANUAL REVENUE MEASUREMENTS | Not limited by line item amount | Not limited by line item amount | Y |
| FIW-MC REV1 | Not limited by line item amount | Not limited by line item amount | Y |
| FIW-MC REV2 | Not limited by line item amount | Not limited by line item amount | Y |
| A/R DELINQUENCY INFORMATION | Not limited by line item amount | Not limited by line item amount | N |
| CMA | Not limited by line item amount | Not limited by line item amount | Y |
| BLUE DOLLARS | Not limited by line item amount | Not limited by line item amount | Y |

| 6TH | |
|---|---|
| Challenges | |
| Weight: | 25.00 % of TI |

## OTHER IMPORTANT INFORMATION

**Right to Modify or Cancel:** The Incentive Plan is described on the internal Incentive Plan Website: http://w3.ibm.com/hr/global/incentives/ ("Plan"), and you should rely on the details provided within the Website for up-to-date information. The Plan does not constitute an express or implied contract or a promise by IBM to make any distributions under it. IBM reserves the right to adjust the Plan terms, including but not limited to any quotas or target incentives, or to cancel the Plan, for any individual or group of individuals, at any time during the Plan period up until any related payments have been earned under its terms. Because of the need for confidentiality, decisions regarding changes to IBM's programs, practices, or policies are generally not discussed or evaluated below the highest levels of management. Managers and their representatives below such levels do not know whether IBM will or will not change or adopt any particular compensation plan; nor are they in a position to advise any employee on, or speculate about, future plans. Employees should make no assumptions about the impact potential Plan changes may have on their personal situations unless and until any such changes are formally announced by IBM.

**Advances Against Final Business Results:** Because your Plan quotas (or similar performance objectives) are based on a business model dependent on complete, final, and accurate business results, periodic payments you may receive under the Plan are advances. Deductions for overpayments may be made from any advances paid to you up until the payments are earned under the Plan terms. Payments are earned at the end of the quarter following the end of your Plan period (for example, for some six-month plans, the Plan period ends on June 30 and therefore the payments are earned on the following September 30th; for calendar-year annual plans, the Plan period ends on December 31 and therefore the payments are earned on the following March 31st) provided the following conditions have been met: (1) you have complied with the Incentive Plan, the Business Conduct Guidelines and other IBM policies; (2) you have not engaged in any fraud or misrepresentation relating to any of your sales transactions or incentives; (3) the customer has paid the invoice for the sales transaction related to your incentive; and (4) the incentives processes and calculations are final and contain no errors. If any of the foregoing conditions have not been met, then the incentive is not earned.

**Payment Thresholds:** For Plans with minimum periodic thresholds for specific incentive elements, those minimum targets must be met for the related periodic incentive payment to be released. Target Incentive earnings opportunities assume achievement of all applicable minimum periodic thresholds. For specific threshold criteria, if any, that apply to your Incentive Plan, view your full Plan details using the link to the

Field Management
Incentive Plan Website provided above.

**Significant Transactions:** IBM Management reserves the right to review and, in its sole discretion, adjust incentive payments associated with transactions which (1) are disproportionate when compared with the territory opportunity or quota size; or for which (2) the incentive payments are disproportionate when compared with the individual's performance contribution towards the transactions.

**Adjustments for Errors:** IBM reserves the right to review and, in its sole discretion, adjust or require repayment of incentives payments resulting from any errors in incentives processes or calculations.

**Progress Reports:** Any information regarding Plan achievement that may be made available to employees during the year is provided for informational purposes only, and does not constitute a promise by IBM to make any specific distributions to any employee.

**Salary:** Any incentive opportunity communicated to you which includes some aspect of salary in the calculation reflects the salary in effect on the date such communication was prepared. Actual earnings opportunities will take into account any salary adjustments that may be made during the year.

**Applicability:** In the event any provision of this Disclaimer is held to be invalid or unenforceable, the remaining provisions of this Disclaimer remain in full force and effect.

*END OF DISCLAIMER*

Happy 2007 Selling John!

FMS build 5.5 (5.5.6.3)▓

# Exhibit

# B



# 2007 Leveraged Sales Incentive Plan Plan-at-a-Glance Module

January 8, 2007

Internal use only

© 2007 IBM Corporation

# Business Priorities & Incentive Plan Focus

| 2007 Business Priorities | 2007 Incentive Plan Focus |
|---|---|
| ■ **Achievement of IBM's Revenue Growth Objectives** | ■ **New in 2007**<br>   • Implement a six month quota process<br>   • Higher thresholds<br>   • Additional payment at 100% |
| ■ **Ensure Profitable Revenue** | ■ **Maintain Profit in Incentive Plans** |
| ■ **Maintain Overall Incentive Plan Design** | ■ 75% of Target Incentive (TI) – Quota Elements<br>   • Revenue, Profit and Signings<br>■ 25% of Target Incentive (TI) – Individual Challenges Element<br>   • Provide sales leaders with flexibility/control |

Internal use only

© 2007 IBM Corporation

# Leveraged Sales Incentive Plan Terminology



**On Target Earnings (OTE)**
Base Pay + Target Incentive

**Target Incentive**
Incentive earning opportunity

**Individual Challenges**

**Base Pay**
Fixed portion of pay

**Individual Incentive Elements**
The criteria by which performance is measured, e.g.
- Primary element, such as revenue
- Secondary elements, if applicable, such as profit and/or signings
- Individual Challenges

**Weightings**
The relative proportion of Target Incentive Pay that is assigned to each incentive element, e.g.
- Primary element     = 45%
- Secondary element   = 30%
- Individual Challenges = 25%

**Pay Mix**
The ratio of Base Pay to Target Incentive. For example, a 60/40 pay mix means 60% of OTE is Base Pay and 40% is Target Incentive

Primary Element
Secondary Element
Individual Challenge
Base Pay

3

2007 Leveraged Sales Incentive Plan

# 2007 Incentive Plan Design

## Incentive Plan Framework - Key Features Maintained for 2007

- **Base Design**
  - 75% measurements, 25% challenges

- **Profit Focus**
  - Profit focus for most sales managers, sales executives and sellers
  - Profit maintained within GBS / GTS incentive plans for managers, delivery roles and selected sellers

- **Services Focus**
  - Services Signings focus for sales coverage roles – same as 2006
    - 20% TI quota-based element for coverage managers
    - Continued use of Individual Challenges for services signings for all Sector / SMB coverage sellers
  - Signings continues as primary element measurement for GBS / GTS

© 2007 IBM Corporation

Internal use only

4

## 2007 Leveraged Sales Incentive Plan

### Key Design Changes / Highlights for 2007

- **Six Month Quota Process**
  - Provides business flexibility and two "year-end" earnings events for all sales roles

- **Profit Focus**
  - Profit quota and measurements for managers aligned with pricing delegation
    - ➢ TMs / TEs / TDs / STG sales managers profit quota now primary
    - ➢ Most sellers primary quota is revenue / profit is secondary
    - ➢ Profit measure changes from NEBA to BMC GP

- **Payout Table**
  - General design unchanged with two modifications
    - ➢ 75% minimum performance threshold – revenue/profit/signings
      - – 40% threshold for SWG sales
    - ➢ 3% Element Target Incentive (ETI) paid at 100% of quota for all measurement elements*

- **Services Focus**
  - SO Blue Dollar revenue quota / attainment for S&D coverage sales roles
  - SO / MBPS/ AMS SO revenue / profit provision - attainment with no "new account" quota
  - Services roles - implementation of more common global incentive plan design & measurements

- **Global Financing**
  - Common 15% IGF uplift for revenue / profit attainment, and "as if" profit
  - Select significant IGF signings added to the Significant Signings Incentive for IGF sellers

- **OEM HW and SW Focus**
  - Large Network Equipment Provider (NEP) or Embedded Solution Provider (ESP) OEM contracts have been added to the Significant Signings Incentive
  - Lenovo revenue is no longer included within S&D coverage revenue quotas or attainment
  - Revenue and profit attainment will flow when Lenovo is included within specific Services contracts, and through the IGF uplift when IGF financing is utilized

Internal use only
Does not apply to executives

© 2007 IBM Corporation

5

# Profit Remains a Strategic Focus for All of IBM

- **Gross Profit (GP BMC) measurement for both sales managers and sellers**
  - Improve "line of sight"
  - Align measurements in the field

- **Accurate tracking is improving**
  - New BRIO Achievement Reports will show percent profit margin attainment
  - We will continue to enhance our processes and systems to improve profit measurements at the customer number transaction level
  - Detailed profit education available to improve ability to forecast/manage profit

- **More work remains – not all will be completed in 2007**
  - GTS and Software labor based services – improve project level profitability in the US, Japan and Canada
  - Maintenance profit at brand or customer number level – all countries except US
  - Pricing tools to illustrate BMC gross profit margins in addition to total GP shown today
  - Consistent System X profit measurement definitions – Economic profit vs BMC GP
  - Linking System X special bid pricing to transactions
  - Business Partner sales out "landing" reporting

©2007 IBM Corporation

6

# Six-Month Quota Cycles:  More Market-Driven

- **Advantages for Sales and Services Teams**
  - Much more accurate quotas -- no more mid-year adjustments
    - ➢ FY06 actual results not required; 1H06 actuals are the point of comparison
    - ➢ 2H07 quotas set in comparison to 2H06 actual results
  - Two opportunities to achieve
    - ➢ Two opportunities to reach overachievement accelerators!
    - ➢ 4Q selling behavior in both June and December
    - ➢ Opportunity to "start over" in 2H

- **Advantages for IBM**
  - More flexible
    - ➢ Faster integration of acquisitions
    - ➢ Added flexibility when account coverage change required
  - More motivational
    - ➢ Sellers better able to visualize achievement of smaller six-month quota
  - Better results possible
    - ➢ Other companies report improved business results when moving from annual performance periods to six-month cycles

© 2007 IBM Corporation

# Six-Month Quota Process

| November/December | January 24 | May/June | July 10 |
|---|---|---|---|
| ■ 2007 1H Targets Set<br>  • Based on 1H actual results and 1H07 financial plan | ■ Six-month quotas deployed<br>■ No quota changes during 1H<br>■ 50% Target Incentive (TI) earning opportunity | ■ 2007 plan / 2H targets reviewed<br>■ 2H plan set for quotas<br>■ Minimal incentive plan design updates | ■ Six-month quotas deployed<br>■ 50% TI earnings opportunity |

## Implementation

- January 1H07 quotas based on November financial plan and 1H06 actuals
  - Complete cross-BU interlock
- Utilize annual incentive plan design across two discrete quota cycles
  - Same sales plans (PDTs, measurements, territories, etc.)
- January quotas remain in place through June 30th
  - No need for February / March budget updates to change quotas
- 2007 2H plans and targets finalized in April for July 2H quota deployment
  - Quotas held consistent through second six-month period
- 1H plan over or under achievements not reassigned in 2H
- Individual earnings are paid against 1H & 2H quota attainment
  - 1H earnings opportunities are final and closed in June
  - 2H is a fresh start in July

Internal use only

© 2007 IBM Corporation

# 2007 Leveraged Sales Incentive Plan – Standard Payouts

- **Applies to both Primary and Secondary incentive elements**
  - Two separate six month plans
  - Secondary element must be revenue, signings or profit measure for accelerators to apply
  - For most roles, minimum six month plan revenue / signings quota size to be eligible for any incentive plan = $1.5M for 12 major countries
    - ➤ $1.0M for other countries

| 1H 2007 Performance | 1H 2007 Payout |
|---|---|
| @ 75% Threshold (Jan – 10%, Feb – 20%, Mar – 32%, Apr – 42%, May – 60%, Jun – 75%)* | 75% ETI payout |
| 75 - 100% attainment of quota | 1% of ETI paid for every 1% of attainment |
| Attainment over 100% of quota | 2%** of ETI paid for every 1% of attainment – no cap + additional 3% ETI paid at 100% attainment |

| Quota Attainment (%) | 50 | 75 | 90 | 100 | 110 | 125 | 150 |
|---|---|---|---|---|---|---|---|
| Payout (% of ETI) | 0 | 75 | 90 | 103 | 123 | 153 | 203 |

\* Same for 2H 07 months
\*\* 3% for signings elements

2007 Leveraged Sales Incentive Plan

Internal use only

© 2007 IBM Corporation

# Six-Month Quota Plan – Scenarios & Examples

Revenue Quota:  1H = 2M, 2H = 2M, FY = 4.0M

| | | Eligible Employee Scenario | | | |
|---|---|---|---|---|---|
| | | 1<br>Make 1H, Make 2H vs Make FY | 2<br>Miss 1H, Miss 2H vs Miss FY | 3<br>Make 1H, Miss 2H vs Miss FY | 4<br>Miss 1H, Make 2H vs Make FY |
| **Attainment** | | | | | |
| | 1H | 2.1 | 1.9 | 2.0 | 1.9 |
| | 2H | 2.1 | 1.9 | 1.9 | 2.1 |
| | FY (1H+2H) | 4.2 | 3.8 | 3.9 | 4.0 |
| **2007 FY ETI Earned** | | | | | |
| | 1H | 56.5% | 47.5% | 51.5% | 47.5% |
| | 2H | 56.5% | 47.5% | 47.5% | 56.5% |
| | 1H+2H | 113% | 95% | 99% | 104% |
| **2007 FY Plan** | | 113% | 95% | 97.5% | 103% |

**Assumptions:**  2x overachievement accelerator for 1H, 2H and FY & 75% threshold
  * % of quota attained in 1H/2H (% of annual earnings)

These scenarios depict four different earnings opportunities in 2007 for employees on the same 1H and 2H quotas. This is a subset of possibilities. This is only intended to highlight the differences in earnings opportunities between the new six month quota process and the annual (FY) process.

Internal use only

© 2007 IBM Corporation

# Individual Challenges - Design

- **What's New for 2007**
  - Individual Business Unit Categories
    - ➢ Each WW BU will have on average 30 challenge "categories" to select from in FMS
  - Six-month plan challenges managed as two specific "plan events"
    - ➢ Higher % of TI challenges (4%+) should be issued to make each challenge TI meaningful and to fully utilize the 25% TI for each six-month period

- **Earnings for each individual will depend on how challenges achieved**
  - From 0% TI (if all challenges missed) to 25% TI or more
    - ➢ Most roles have 25% TI weighting for this element
  - It is possible to earn greater than 25% TI via this element if rep earns all challenges and more than 25% of TI issued (recycling is permitted with applicable approval)
  - 100% of all challenges achieved will be paid
  - Timely issuing and scoring of challenges more important with funding for six month plans
    - ➢ Unused funds from 1H07 do not recycle for use in 2H07

2007 Leveraged Sales Incentive Plan

© 2007 IBM Corporation

Internal use only

11

# Individual Challenges – Execution

- **Immediate managers issue "make/miss" challenges**
  - Each individual must receive challenges equal to the percent of TI in their plan design
  - Focus challenges on top business priorities
  - Challenges prospective – issued in FMS to cover defined period of time, usual duration one quarter
  - Managers must confirm achievement of challenges within 30 days of close of period
  - Sales managers must continue to maintain scoring documentation for 2 years
  - Testing of challenges content, documentation, and expense management continues
  - Key 1H07 dates for six-month plans
    - ➢ All eligible employees have at least one challenge issued by February 7
    - ➢ Full TI% of challenges issued – May 31

- **Effective challenges must be clearly written and set at the appropriate level of difficulty**
  - Equally realistic and challenging – with a 40% to 60% probability of achievement
  - Challenges should not duplicate specific incentives that exist in other parts of the incentive plan, i.e., significant signings incentives or primary / secondary elements
  - Used primarily for incentives to close specific key current quarter transactions or to achieve a specific current monthly / quarterly financial measurement

- **Support Available**
  - Additional training material, including QuickCases, available through Global Incentives Web site
    http://w3.ibm.com/hr/global/incentives/edu_resources.html
    http://w3.ibm.com/hr/global/incentives/mgr_instructions.html
    - ➢ Clarifies differences between Individual Challenges, Special Focus Programs, Geo / IOT incentives and Contests / Awards

© 2007 IBM Corporation

# Where to Get Additional Information

- **Where to get additional information:**

  - Global Incentives Web site with links to Geo / Region / Country sites:

    - http://w3.ibm.com/hr/global/incentives/

  - Manager's Instructions & Operations Guide (available on the Global Incentives Web site)

  - Geo / IOT Business Unit Incentive Plan Liaisons

© 2007 IBM Corporation

Internal use only

13

COPY

1  Mitchell F. Boomer (State Bar No. 121441)
   Cara Ching-Senaha (State Bar No. 209467)
2  JACKSON LEWIS LLP
   199 Fremont Street, 10th Floor
3  San Francisco, California 94105
   Telephone: (415) 394-9400
4  Facsimile: (415) 394-9401 ·

5  Attorneys for Defendant
   International Business Machines Corporation
6  (erroneously sued as "International Business
   Machines, Inc.")  ·
7

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

MAY 2 3 2008

GORDON PARK-LI, Clerk
BY: ___MARY ANN MORAN___
                    Deputy Clerk

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       COUNTY OF SAN FRANCISCO

10

11

12 | JOHN SCHWARZKOPF, | Case No.: CGC-08-474469 |
   | Plaintiff, | **DEFENDANT INTERNATIONAL BUSINESS MACHINES CORPORATION'S ANSWER TO PLAINTIFF JOHN SCHWARZKOPF'S UNVERIFIED COMPLAINT** |
   | v. | |
   | INTERNATIONAL BUSINESS MACHINES, INC.; AND DOES 1 THROUGH 20, | |
   | Defendants, | Complaint filed: April 21, 2008 |

18     Defendant International Business Machines Corporation (erroneously sued as

19 "International Business Machines, Inc.") (hereinafter "Defendant" or "IBM") hereby answers

20 Plaintiff John Schwarzkopf's unverified complaint ("Complaint') as follows:

21                          **GENERAL DENIAL**

22     Pursuant to California Code of Civil Procedure Section 431.30(d), Defendant denies,

23 generally and specifically, each and every allegation contained in Plaintiff's unverified

24 Complaint.

25                        **AFFIRMATIVE DEFENSES**

26     By way of affirmative defense to the allegations of the Complaint, Defendant

27 alleges as follows:

28 ///

                                     1

## First Affirmative Defense

The Complaint, and all causes of action alleged therein, fails to state facts sufficient to constitute a cause of action against Defendant.

## Second Affirmative Defense

Plaintiff's Complaint, and each cause of action set forth therein, is barred in whole or in part on the ground that there was no meeting of the minds on all necessary and material terms of any purported oral, written or implied agreement between Plaintiff and Defendant.

## Third Affirmative Defense

One or more of Plaintiff's causes of action are barred in whole or in part on the ground that there was no meeting of the minds on all necessary and material terms of any purported oral, written or implied agreement between Plaintiff and Defendant.

## Fourth Affirmative Defense

Plaintiff's Complaint, and each cause of action set forth therein, is barred in whole or in part on the grounds that, as to each and every purported oral, written, implied or other agreement alleged therein, one or more conditions precedent were not satisfied or fulfilled.

## Fifth Affirmative Defense

Plaintiff's Complaint, and each cause of action set forth therein, is barred in whole or in part on the ground that the terms of the alleged contract that Plaintiff seeks to enforce was properly and justifiably terminated, modified, withdrawn, and/or rescinded by Defendant before the contract was accepted, had accrued, became vested, or had been performed.

## Sixth Affirmative Defense

Any recovery on Plaintiff's Complaint for breach of contract is barred on the grounds that Defendant fully performed all of its obligations under any alleged contract.

## Seventh Affirmative Defense

The Complaint and all causes of action contained therein, are barred by the doctrine of waiver because, among other reasons, Plaintiff accepted all the terms and conditions of IBM's Sales Incentive Plan, and thus knowingly accepted all of the Plan's terms, conditions,

1  and limitations and, similarly, ratified the amount of commissions awarded him by accepting

2  payment.

### Eighth Affirmative Defense

4          Plaintiff is barred from recovering any damages for lost wages, or any

5  recovery for lost wages must be reduced, if and to the extent that Plaintiff failed to exercise

6  reasonable diligence to mitigate his alleged damages, if any.

### Ninth Affirmative Defense

8          Defendant alleges, on information and belief, that the Complaint, and all causes of

9  action contained therein, are barred by the doctrine of estoppel.

### Tenth Affirmative Defense

11         The Complaint and all causes of action contained therein, are barred because

12 Defendant's conduct did not constitute fraud, fraud in the inception, fraud in the *factum*,

13 promissory fraud, misrepresentation, or deceit.

### Eleventh Affirmative Defense

15         Any recovery on Plaintiff's complaint, or any purported cause of action alleged

16 therein, is barred because Defendant did not knowingly nor negligently make any false

17 representations to Plaintiff. To the contrary, Defendant communicated all terms and conditions

18 of its Sales Incentive Plan to Plaintiff, including, without limitation, provisions reserving

19 managerial discretion to limit commission earnings in the case of significant transactions based

20 on numerous factors, including the relative contribution of the salesperson to such transactions.

### Twelfth Affirmative Defense

21         Any recovery on Plaintiff's complaint, or any purported cause of action alleged

22 therein, is barred because Plaintiff experienced no damages as a result of any act or omission

23 by Defendant.

### Thirteenth Affirmative Defense

25         Plaintiff was not justified in relying upon any alleged representation or

26 misrepresentation of Defendant.

### Fourteenth Affirmative Defense

28         Any statements made by Defendant about Plaintiff were made in good faith,

1  honestly, and not maliciously.

2  <div align="center">**Fifteenth Affirmative Defense**</div>

3  Any statements made by Defendant upon which Plaintiff allegedly relies were not

4  false assertions of fact(s), but rather statements of opinion upon which no action can be taken.

5  <div align="center">**Sixteenth Affirmative Defense**</div>

6  To the extent Plaintiff's complaint, or any purported cause of action alleged therein,

7  alleges emotional or physical injury, this court lacks jurisdiction and any recovery is barred by the

8  California Workers' Compensation Act's exclusive remedy doctrine. (Labor Code section 3200,

9  et seq.)

10  <div align="center">**Seventeenth Affirmative Defense**</div>

11  The Complaint and all causes of action contained therein are barred by the doctrine

12  of accord and satisfaction.

13  <div align="center">**Eighteenth Affirmative Defense**</div>

14  The Complaint and all causes of action contained therein are barred by the doctrine

15  of novation.

16  <div align="center">**RELIEF REQUESTED**</div>

17  WHEREFORE, Defendant IBM prays as follows:

18  1.  That Plaintiff takes nothing herein;

19  2.  For reasonable attorneys' fees;

20  3.  For the cost of suit herein; and,

21  4.  For such other and further relief as the court deems just and proper.

22

23  Respectfully Submitted,

24  Dated: May 23, 2008        JACKSON LEWIS LLP

25

26  By:  Mitchell F. Boomer

Cara Ching-Senaha

27  Attorneys for Defendant

INTERNATIONAL BUSINESS

28  MACHINES CORPORATION

4

1

## PROOF OF SERVICE

2          I, Cheryl K. Baltru, declare that I am employed with the law firm of Jackson Lewis

3    LLP, whose address is 199 Fremont Street, 10th Floor, San Francisco, California 94105; I am

4    over the age of eighteen (18) years and am not a party to this action.

5          On May 23, 2008, I served the attached **DEFENDANT INTERNATIONAL**

6    **BUSINESS MACHINES CORPORATION'S ANSWER TO PLAINTIFF JOHN**

7    **SCHWARZKOPF'S UNVERIFIED COMPLAINT** in this action by placing a true and correct

8    copy thereof, enclosed in a sealed envelope addressed as follows:

9
              Sharon R. Vinick
10             Vinick Law Firm
               350 Sansome Street, Suite 300
11             San Francisco, CA  94104

12   [X]    BY MAIL:  United States Postal Service by placing sealed envelopes with the postage
            thereon fully prepaid, placed for collection and mailing on this date, following ordinary
13          business practices, in the United States mail at San Francisco, California.  [( ) *Courtesy
            copy by fax.*]

14
     [ ]    BY HAND DELIVERY:  I caused such envelope(s) to be delivered by hand to the above
15          address.

16   [ ]    BY OVERNIGHT DELIVERY:  I caused such envelope(s) to be delivered to the above
            address within 24 hours by overnight delivery service.
17
     [ ]    BY FACSIMILE:  I caused such document to be transmitted by facsimile from our fax
18          number (415) 394-9401 to the fax number indicated above (by written agreement,
            confirming letter dated and signed MM/DD/YY).
19

20          I declare under penalty of perjury under the laws of the State of California that the

21   above is true and correct.

22          Executed on May 23, 2008, at San Francisco, California.

23

24                                                        Cheryl K. Baltru

25

26

27

28

PROOF OF SERVICE                                          Case No. CGC-08-474469

JS 44 - CAND (Rev. 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO.)

## I. (a) PLAINTIFFS
John Schwarzkopf,

## DEFENDANTS
International Business Machines, Inc.; and DOes 1 through 20,

ADRC 08    02715 RS

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _San Francisco_ _(per complaint)_
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _New York State_
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

E-FILING

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Jackson Lewis LLP
199 Fremont Street
10th Floor
San Francisco, CA  94105
(415) 394-9400

ATTORNEYS (IF KNOWN)
Sharon R. Vinick
Vinick Law Firm
350 Sansome Street, Suite 300
San Francisco, CA 94104

## II. BASIS OF JURISDICTION (PLACE AN 'X' IN ONE BOX ONLY)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For diversity cases only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. ORIGIN (PLACE AN 'X' IN ONE BOX ONLY)
- [ ] 1 Original Proceeding
- [X] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders Suits
- [X] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 OtherPersonalInjury

**PERSONAL INJURY**
- [ ] 362 Personal Injury Med Malpractice
- [ ] 385 Personal Injury Product Liability
- [ ] 388 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing
- [ ] 444 Welfare
- [ ] 440 Other Civil Rights
- [ ] 445 Amer w/ disab - Empl
- [ ] 448 Amer w/ disab - Other

### PRISONER PETITIONS
- [ ] 510 Motion to Vacate Sentence
**Habeas Corpus:**
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

### FORFEITURE/PENALTY
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 RR & Truck
- [ ] 650 Airline Regs
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt Relations
- [ ] 730 Labor/Mgmt Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (US Plaintiff or Defendant)
- [ ] 871 IRS - Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions

## VI. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)
Removal based on diversity jurisdiction (28 U.S.C. § 1441(a) & 28 U.S.C. § 1332(c)).

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] YES  [ ] NO

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AN "X" IN ONE BOX ONLY)
- [ ] SAN FRANCISCO/OAKLAND
- [X] SAN JOSE

DATE May 29, 2008

SIGNATURE OF ATTORNEY OF RECORD

NDC-JS44

JS 44 Page 2
(Rev. 11/04)

INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. (a) Plaintiffs - Defendants. Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defend ant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. Jurisdiction. The basis of jurisdiction is set forth under Rule 8(a). F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III. Residence (citizenship) of Principal Parties. This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. Origin. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

V. Nature of Suit. Place an "X" in the appropriate box . If the nature of suit cannot be determined , be sure the cause of action , in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

VI. Cause of Action. Report the civil statute directly related to the cause of action and give a brief description of the cause.

VII. Requested in Complaint. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. Related Cases. This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases. Date and Attorney Signature.

Date and Attorney Signature. Date and sign the civil cover sheet.